UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JENNIFER LOUISE CABLE,                )
                                       )
         Plaintiff,                    )
                                       )    Case No. 1:18-cv-1446
v.                                     )
                                       )    Honorable Robert J. Jonker
COMMISSIONER OF                        )
SOCIAL SECURITY,                       )
                                       )
         Defendant.                    )
_____)

# REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security, finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On January 15, 2015, plaintiff filed her applications for DIB and SSI benefits. She alleged an October 15, 2007, onset of disability. (ECF No. 6-5, PageID.267, 269). Plaintiff's claims were denied on initial review. (ECF No. 6-4, PageID.185-200). On November 6, 2017, plaintiff received a hearing before the ALJ. (ECF No. 6-2, PageID.67-141). The ALJ issued his decision on March 12, 2018, finding that plaintiff was not disabled. (Op., ECF No. 6-2, PageID.48-60). On November 13, 2018, the Appeals Council denied review (ECF No. 6-2, PageID.32-34), rendering the ALJ's decision the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following ground: "As treating physicians, the opinions of John Schneider, M.D., and Gary Detweiler, PA-C, should be given controlling weight."[1] (Plf. Brief, 10, ECF No. 11, PageID.1106).

For the reasons set forth herein, I recommend that the Court affirm the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve

---

[1] This is the only developed argument in plaintiff's brief corresponding to her statement of errors. (Plf. Brief, 1, ECF No. 11, PageID.1097). Plaintiff cites no legal authority in support of her argument that the ALJ gave too little weight to the third-party function report completed by her mother. (*Id.* at 10-11, PageID.1106-07). Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citation and quotation omitted).

conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73; *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").

## The ALJ's Decision

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2008. (Op., 4, ECF No. 6-2, PageID.51). Plaintiff had not engaged in substantial gainful activity on or after October 15, 2007, the alleged onset date. (*Id.*). Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine post discectomy in 2007, left foot and ankle posterior tibial tendon dysfunction, post left foot surgery, left plantar fasciitis, asthma, pain disorder, obsessive compulsive disorder, generalized anxiety disorder, adjustment disorder with mixed anxiety and depressed mood, irritable bowel syndrome, chronic interstitial cystitis, and obesity." (*Id.*). Plaintiff did not have an

impairment or combination of impairments that met or equaled a listing impairment. (*Id.*). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of sedentary work with the following exceptions:

> requires the option to alternate sitting and standing 1 to 2 times every hour; no operation of foot controls with the left lower extremity; no exposure to extreme temperatures; occasional exposure to fumes, odors, dusts, gasses, and areas of poor ventilation; no exposure to wetness or humidity; no ambulation over uneven terrain; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crouch; no kneeling or crawling; no exposure to hazards including unprotected heights and dangerous moving machinery; occasional overhead reaching bilaterally; limited to doing simple, routine work involving simple work-related decisions and tolerating occasional workplace changes.

(*Id.* at 7, PageID.54).

The ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and the other evidence of record. (*Id.* at 7-8, PageID.54-55). Plaintiff could not perform any past relevant work. (*Id.* at 11, PageID.58).

The ALJ considered the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the vocational expert (VE) testified that there were approximately 275,000 jobs that exist in the national economy that she would be capable of performing. (ECF No. 6-2, PageID.133-36). The ALJ found that this constituted a significant number of jobs, and that plaintiff was not disabled. (Op., 12-13, PageID.59-60).

**Discussion**

Plaintiff argues that the ALJ should have given controlling weight to the opinions of Dr. Schneider and P.A. Detweiler.  (Plf. Brief, 10, PageID.1106).

Generally, the medical opinions of treating physicians are given substantial, if not controlling weight.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"  *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).

"[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773 (citation and quotation omitted).  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990*); see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p[2] (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Perry v. Commissioner*, 734 F. App'x 335, 339 (6th Cir. 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]' ") (quoting *Biestek v. Commissioner*, 880 F.3d 778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart*, 710 F.3d at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart*, 710 F.3d at 376. This procedural requirement exists,

---

[2] On March 27, 2017, the Administration rescinded SSR 96-2p "for claims filed on or after" that date. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017) (reprinted at 2017 WL 1105348). The Administration noted that Ruling 96-2p was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.*; *see Hancock v. Commissioner*, No. 1:16-cv-1105, 2017 WL 2838237, at *7 n.2 (W.D. Mich. July 3, 2017) ("Those new rules, however, apply only to claims filed on or after March 27, 2017.").

in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith v. Commissioner*, 482 F.3d at 876; *see also Gayheart v. Commissioner*, 710 F.3d at 376 ("This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'") (citation and quotation omitted).

The ALJ noted that plaintiff "underwent a right L4 and L5 discectomy in 2007." (Op., 8, PageID.55). Jurgen Luders, M.D., performed this surgery. (ECF No. 6-8, PageID.412). On October 29, 2010, plaintiff returned to Dr. Luders with complaints of lower back pain and bilateral lower extremity pains that were "somewhat vague in distribution."[3] (*Id.* at PageID.436). Dr. Luders found that plaintiff's motor strength was 5/5 and her sensory responses were grossly intact. He did not recommend surgical intervention because there was no clear-cut cause for the symptoms that plaintiff reported. Dr. Luders sent a copy of this progress note to Dr. Schneider. (*Id.*).

On November 6, 2011, John Harris, D.P.M., performed left foot surgery. (Op., 8, PageID.55; ECF No. 6-9, PageID.510-12). On December 19, 2011, Dr. Harris noted that nine weeks after surgery, plaintiff was doing well. She had mild left foot pain. (ECF No. 6-9, PageID.520). On February 14, 2012, Dr. Harris noted that

---

[3] I have reviewed the entire record, with focused attention on the portions cited by the ALJ and the parties. Finding the pages plaintiff cites has been needlessly complicated because she cites the administrative record page numbers, not the PageID numbers, as required under W.D. MICH. LCIVR 10.9.

plaintiff was walking without crutches or other support. Plaintiff stated that she was "over 100% better." (*Id.* at PageID.530). On November 12, 2015, Dr. Harris found that x-rays of plaintiff's left foot showed no significant degenerative changes. He found no evidence of an acute fracture or dislocation. (ECF No. 6-15, PageID.965). On December 29, 2015, Dr. Harris attempted to treat the pain that plaintiff reported in her left foot with an injection. Plaintiff declined this treatment, indicating that the pain from the injection would hurt much more than the foot pain that she was experiencing. (*Id.* at PageID.964-65). On September 5, 2017, plaintiff returned to Dr. Harris after almost a two-year absence. She reported pain in her left ankle, heel, and arch. (ECF No. 6-17, PageID.1065). Plaintiff's neurological examination returned normal results. Her "muscle power to the flexors, extensors, and evertors of the foot" were all within normal limits. (*Id.* at PageID.1067). Dr. Harris advised plaintiff regarding her treatment options. (*Id.*).

Kevin Fitzgerald, M.D., at Michigan Pain Consultants provided pain management care for plaintiff's lower back. (ECF No. 6-14, PageID.883-93; ECF No. 6-15, PageID.919-63). On June 23, 2015, he noted that plaintiff's straight leg raise test was negative bilaterally. (ECF No. 6-14, PageID.886). On April 26, 2017, he indicated that plaintiff's left straight leg test was positive. (ECF No. 6-15, PageID.924-25). Dr. Fitzgerald did not offer an opinion regarding plaintiff's functional restrictions.

On January 29, 2010, plaintiff told P.A. Detweiler that she was able to tolerate her back pain "fairly well," and that "typically [she did] not use any pain medication for it." (ECF No. 6-12, PageID.792). On March 28, 2011, P.A. Detweiler indicated that plaintiff should return to Dr. Harris for evaluation and treatment of her left foot pain. (*Id.* at PageID.785). On February 3 and April 24, 2014, P.A. Detweiler noted that plaintiff had appropriate mood and affect, and that her insight and judgment were normal. (*Id.* at PageID.764, 771). On April 23, 2015, plaintiff advised P.A. Detweiler that she had "rolled her ankle where she had surgery" three years earlier. (ECF No. 6-16, PageID.1022). Plaintiff reported left foot and back pain as well as feeling depressed. (*Id.* at PageID.1022-23). P.A. Detweiler found that plaintiff had appropriate mood and affect and normal insight and judgment. (*Id.* at PageID.1024). X-rays showed "no evidence of a displaced acute fracture." (*Id.* at PageID.984).

On April 11, 2017, plaintiff related to P.A. Detweiler that Dr. Fitzgerald had treated her back pain for years, but he would not fill out her disability paperwork because she could not afford the necessary supporting tests. (*Id.* at PageID.991). On August 9, 2017, P.A. Detweiler stated that plaintiff was alert and her mood and affect were normal. Plaintiff's memory was normal. She reported no incontinence. Her motor strength and tone were normal. Her gait and station were normal. (*Id.* at PageID.988-89). It was against this backdrop that the ALJ considered the opinions offered by P.A. Detweiler and Dr. Schneider.[4]

---

[4] Plaintiff's progress notes refer to Dr. Schneider as a "supervising provider" or a primary care provider. (*see, e.g.,* ECF No. 6-12, PageID.764; ECF No. 6-16, PageID.999, 1004).

On June 16, 2017, P.A. Detweiler and Dr. Schneider completed a "Lumbar Spine Medical Source Statement" questionnaire. (ECF No. 6-14, PageID.914-17). They opined that plaintiff could sit for about four hours and stand for less than two hours in an eight-hour workday. She could occasionally lift and carry ten pounds, never crouch or climb ladders, and rarely twist, stoop, and climb stairs. She had significant limitations in the use of her hands, fingers, and arms. (*Id.* at PageID.915-16). They stated that plaintiff would likely be off task more than 25 percent of the workday and that she would likely be absent from work more than four days a month and that such restrictions extended back to approximately 2007. (*Id.* at PageID.917).

The ALJ found that these opinions were entitled to reduced weight because the medical record documented "largely benign clinical presentations, effective treatment, and robust activities of daily living[.]"[5] (Op., 9, PageID.56). "Negative straight leg raises were noted throughout the record. (*Id.*) (citing ECF No. 6-13, PageID.825). The RFC questionnaire was a check-the-box form. ALJs are not bound by conclusory statements of doctors where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton*, 246 F.3d at 773; *see also Ellars v. Commissioner*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (ALJs "properly [give] a check-box form little weight where the physician provide[s] no explanation for the restrictions entered on the form and cite[s]

---

[5] The ALJ noted that plaintiff "prepares meals, helps with light housework, drives a car, walks outside, shops in stores and by mail, handles finances independently, and spends time with family. She does moderate exercise daily. She attends her son's football games." (Op., 9, PageID.56) (citations omitted).

no supporting medical evidence."); *see also Nicholas v. Berryhill*, No. 16-14072, 2018 WL 2181463, at *3 (E.D. Mich. Jan. 25, 2018) ("Courts in this circuit have held that a medical source statement in 'check-the-box' format, by itself, provides little to no persuasive value — to hold otherwise would neglect its glaring lack of narrative analysis.") (citation and quotation omitted).

The statement regarding "how often plaintiff would likely miss work was conjecture, not a medical opinion." *Ellis v. Commissioner*, No. 1:15-cv-726, 2016 WL 3735776, at *4 (W.D. Mich. July 13, 2016). I find no violation of the treating physician rule.

The treating physician rule did not apply to P.A. Detweiler's opinions. "There is no 'treating physician's assistant rule' and the opinions of a physician's assistant are not entitled to any particular weight." *Hancock v. Commissioner*, 2017 WL 2838237, at *7. Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at *2 (SSA Aug. 9, 2006)). The opinions of physician's assistants fall within the category of information provided by "other sources." *See Noto v. Commissioner*, 632 F. App'x 243, 248-49 (6th Cir. 2015). The social security regulations require that

information from other sources be "considered." 2006 WL 2329939, at * 1, 4. This is not a demanding standard, and it was easily met here. (Op., 9, PageID.56). I find no error.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: September 1, 2019           /s/  Phillip J. Green
                                   PHILLIP J. GREEN
                                   United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).